UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| RAJINDER SINGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00248-JRO-MJD |
| | ) | |
| WARDEN OF CLAY COUNTY JUSTICE CENTER, | ) | |
| | ) | |
| MARKWAYNE MULLIN in his official capacity as Secretary of the Department of Homeland Security, | ) | |
| DEPARTMENT OF HOMELAND SECURITY, | ) | |
| TODD BLANCHE in his official capacity as Acting Attorney General, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Rajinder Singh, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA or its regulations governing bond determinations. Moreover, Petitioner's current detention does not violate the Fifth Amendment's Due Process Clause. The Court therefore **DENIES** his Petition for Writ of Habeas Corpus. Dkt. [1].

## I.  BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of India.  Dkt. 1 at 4, 12; Dkt. 1-2 at 1; Dkt. 9 at 2. On or around January 27, 2019, he entered the United States without inspection.  Dkt. 1 at 12; Dkt. 1-2 at 1; Dkt. 9 at 2.  He was arrested by U.S. Customs and Border Patrol and processed for expedited removal under 8 U.S.C. § 1225(b)(1) after Petitioner expressed a credible fear of harm if returned to his home country.  Dkt. 9 at 2; Dkt. 9-1 at 3.  An asylum officer found that he had a credible fear.  Dkt. 9-1 at 3.  He was then detained for several weeks, presumably pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum."). *See id.*

On April 11, 2019, the Department of Homeland Security also initiated removal proceedings by issuing him an I-862 Notice to Appear ("NTA").  Dkt. 1-2 at 1; Dkt. 9-2 at 1.  The NTA charges state that Petitioner is removable based on

2

8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). Dkt. 1-2 at 1; Dkt. 9-2 at 1. He was released on May 1, 2019, on his own recognizance after paying a surety bond. Dkt. 9 at 2; Dkt. 9-1 at 3. On September 20, 2019, Petitioner applied for asylum. Dkt. 9 at 2; Dkt. 1-3 at 9. *See generally* dkt. 1-3.

In March 23, 2026, Petitioner was stopped by the Indiana State Police during a motor carrier inspection at a highway weigh station in West Terre Haute, Indiana. Dkt. 9 at 2; Dkt. 9-1 at 2. A records check showed he was not lawfully admitted to the United States, and ICE was notified. That same day, U.S. Immigration and Customs Enforcement ("ICE") officers subsequently placed a detainer on Petitioner and issued an I-200 warrant for his arrest. Dkt. 9 at 2; Dkt. 9-3. On March 24, 2026, ICE officers took Petitioner into custody. Dkt. 9 at 2; Dkt. 9-1 at 2. He was taken to the Clay County Justice Center in Brazil, Indiana. Dkt. 1 at 4, 12; Dkt. 1-4; Dkt. 9-1 at 3. Petitioner no longer claims a fear of harm or persecution if removed from the United States. Dkt. 9-1 at 4.

Petitioner filed the instant habeas petition. Dkt. 1. He names as Respondents the Warden of the Clay County Justice Center; Department of Homeland Security; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; and Todd Blanche, Acting Attorney General of the United States. Dkt. 1 at 4–5.

**B.    Statutory Background**

3

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018).

Section 1225(b)(1) requires the detention and "expedited removal" of certain applicants for admission.  *See Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108–09 (2020).  An applicant is subject to expedited removal if he is "arriving in the United States" and determined by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(i).[1]  Upon such determination, the officer "shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for

---

[1] "[C]ertain other aliens" are also subject to expedited removal, including any aliens "designated by the Attorney General" who have "not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" for fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II).

4

asylum . . . or a fear of persecution." *Id.* (emphasis added). Where an alien claims asylum, the immigration officer "shall refer" the alien to an asylum officer for an interview to determine whether he has a "credible fear of persecution." *Id.* § 1225(b)(1)(A)(ii), (B)(ii). Aliens determined to have a credible fear of persecution "shall be detained for further consideration of the application for asylum" in a standard removal hearing. *Id.* § 1225(b)(1)(B)(ii); *see Thuraissigiam*, 591 U.S. at 109 (citing 8 C.F.R. § 208.30(f)). Aliens determined to lack a credible fear of persecution are subject to expedited removal and shall be detained "until removed." *Id.* § 1225(b)(1)(B)(ii).

Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287. With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8

5

U.S.C. § 1226(a) (emphasis added).  Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities."  *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.  DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents.  Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission."  Petitioner argues that Section 1226(a) and its associated regulations govern his detention[2] and that he not only has a right to a bond hearing but is entitled to immediate release.  Dkt. 1 at 15–16; *see also* dkt. 10 at 8–9.  He also brings a claim under the Fifth Amendment's Due Process Clause.  Ultimately, he is not entitled to the relief he seeks.[3]

---

[2] It appears that, following Petitioner's credible fear interview in 2019, he was detained pursuant to the expedited removal procedures under 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum.").  *See* Dkt. 9-1 at 3.  However, Petitioner no longer claims a credible fear of harm, dkt. 9-1 at 4; he argues that his detention is solely pursuant to Section 1226(a), dkt. 1 at 2–3; and Respondents argue that his detention is solely pursuant to 1225(b)(2)(A) and that he is not "covered under [1225](b)(1)," dkt. 9 at 5.  Therefore, the Court does not address the relevance of his prior status under the expedited removal procedures.

[3] Petitioner argues that the Court should not require exhaustion of administrative remedies in this case. Dkt. 1 at 13.  Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 7, 9, so the Court does not address the issue.

### A.   *Castañon-Nava* **does not control this case.**

As a preliminary matter, Respondents and the Petitioner alerted the Court to the Seventh Circuit's recent opinion in *Castañon-Nava v. U.S. Department of Homeland Security*, No. 25-3050, --- F.4th ---, 2026 WL 1223250 (7th Cir. May 5, 2026), *see* dkts. 15 & 16, which includes a fulsome discussion of the Section 1225(b)(2)(A) issue presented in the petition.   However, the *Castañon-Nava* opinion confirms that the Seventh Circuit has yet to issue binding precedent resolving the scope of Respondents' mandatory detention authority under Section 1225(b)(2)(A).

In *Castañon-Nava*, the Seventh Circuit addressed allegations that DHS and ICE violated a 2022 Consent Decree addressing the warrantless arrests of aliens pursuant to 8 U.S.C. § 1357(a)(2).  The Consent Decree resolved a class-action lawsuit alleging violations of 8 U.S.C. § 1357, brought by a certified class of "[a]ll current and future persons arrested without a warrant for a civil violation of U.S. immigration laws within the area of responsibility of the ICE Chicago Field Office," against DHS, ICE, and various federal officials.  *Castañon-Nava*, 2026 WL 1223250, at *2.  In the Consent Decree, the defendants agreed "to comply with § 1357(a)(2) when making warrantless arrests and issue a 'Broadcast Statement of Policy' affirming 'the underlying laws and policies applicable to all arrests effected under 8 U.S.C. § 1357(a)(2).'"  *Id.* at *1.  The Consent Decree also had an expiration date of May 12, 2025.  *Id.* at *2.  One day after the expiration date, the *Castañon-Nava* class alleged that the defendants violated the Consent Decree.  *Id.*  In relevant part, the district court issued two

orders to address the breach.  First, it ordered the Consent Decree extended by 118 days.  Second, it ordered the defendants to release "13 class members, as well as approximately 200 additional individuals, whose arrests (in the district court's words) 'potentially' violated § 1357(a)(2)."  *Id.* at *1.

The defendants moved to stay both orders pending appeal.  That motion was granted in part and denied in part in a 2–1 decision.  *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025).  After full briefing and oral argument, a majority of the Seventh Circuit ultimately affirmed in part and denied in part the district court's two orders, with Judge Lee writing the majority opinion and Judge Pryor concurring in part and concurring in the judgment.  Between these two opinions, the Seventh Circuit affirmed the district court's first order "extend[ing] the Consent Decree by 118 days" and part of the second order "releas[ing] . . . class members for whom a determination has been made that they were arrested without a warrant in contravention of 8 U.S.C. § 1357(a) and the Consent Decree," but reversed the remainder of the district court's second order "to the extent it requires the release of 'potential class members' and any person who was arrested pursuant to an I-200 warrant (defective or otherwise)."  *Castañon-Nava*, 2026 WL 1223250, at *22.  Judge Kirsch dissented, concluding that the Court "should vacate both orders and remand the case to the district court."  *Id.* at *39 (Kirsch, J., dissenting).

So far, this has little to do with the case at hand.  Here is how a discussion of Section 1225(b)(2)(A) arose in that case.  In opposing the district court's second order—that is, the one ordering the release of 13 class members and

8

approximately 200 "potential" class members—the defendants argued, in relevant part, that the district court "restrict[ed] the government's ability to detain noncitizens pursuant to its authority under § 1225(b)(2)(A)[.]"  *Id.* at *8. On that argument, however, *Castañon-Nava* is a fractured 1–1–1 opinion.

Judge Lee confronted the defendants' Section 1225(b)(2)(A) argument and disagreed with it, while acknowledging that "his colleagues . . . believe that we should not reach this issue."  *Castañon-Nava*, 2026 WL 1223250, at *9–21 (Lee, J.).  Judge Pryor concluded that it was not necessary for the Court to "reach[] the merits of the Plaintiffs' argument that the Defendants' interpretation of 8 U.S.C. § 1225(b)(2)(A) is improper," declining to join that portion of Judge Lee's opinion and voting to resolve the case on other grounds.  *Id.* at *22 (Pryor, J., concurring in part and concurring in judgment); *see id.* at *25–26.  And Judge Kirsch concluded in his dissent that the defendants' reading of Section 1225(b)(2)(A) is correct.  *Id.* at *34–38 (Kirsch, J., dissenting).  The portion of the merits opinion in *Castañon-Nava* addressing the meaning and applicability of Section 1225(b)(2)(A) is, therefore, not a precedential holding of the Seventh Circuit,[4] and both Judge Lee's and Judge Kirsch's opinions are persuasive

---

[4] The Seventh Circuit's discussion of Section 1225(b)(2)(A) in its emergency stay order in *Castañon-Nava*, 161 F.4th 1048, is also not binding precedent.  As the merits opinion all but confirms, the stay order's discussion of Section 1225(b)(2)(A) is dicta because it was not essential to the resolution of the stay order or the merits.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").  Further, decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record."  *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

9

authority on this issue.  While the reasoning in these opinions does not arise from the procedural posture of this case (i.e., a habeas petition directly challenging the Respondents' application of Section 1225(b)(2)(A) to the petitioner), both warrant serious consideration.  The same is true of the many orders from this District that have deferred to Judge Lee's reasoning in the *Castañon-Nava* stay opinion,[5] which mirrors his reasoning in his merits opinion and two other recent opinions from the Second, Sixth, and Eleventh Circuits. *See Cunha v. Freden*, No. 25-3141-pr, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Lopez-Campos v. Raycraft*, --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026); *Alvarez v. Warden*, No. 25-14065, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026).

Respectfully, and for the reasons explained below and in this Court's prior orders, *e.g.*, *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's merits opinion in *Castañon-Nava*, which is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the

---

[5] *See, e.g.*, *Alejandro v. Olson*, 817 F. Supp. 3d 672, 683 (S.D. Ind. 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). Opinions of other judges in this District do not bind this Court. *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted) ("[D]istrict court opinions lack precedential force even vis-à-vis other judges in the same judicial district.").

merits in habeas actions. *Buenrostro-Mendez v. Bondi,* 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026).[6]

**B.    Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.**

Section 1225(b)(2)(A)'s plain terms require Petitioner's detention pending his removal proceedings. When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin,* 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted). In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole. *Id.* at 852. Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

To start, Petitioner is an "applicant for admission." The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed

---

[6] *See also Rayo v. Olson,* No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson,* No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson,* 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson,* No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed,* No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson,* No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed,* No. 25-3127 (7th Cir. Nov. 25, 2025).

the border, that definition is broader.  "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here.  *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission.").  There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted.  He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2).  *Jennings*, 583 U.S. at 287.  The Court has established that Section 1225(b)(1) does not apply to Petitioner.  *See* Section II.A, *supra.*  Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country.  Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings").

Petitioner raises several arguments rejecting this straightforward application of Section 1225. The Court does not find these arguments persuasive.

### 1. "Seeking Admission"

Petitioner argues that Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek lawful entry at the country's borders. Dkt. 1 at 5, 8, 10–12; dkt. 10 at 5. The Court disagrees.

As explained above, no binding precedent requires this Court to adopt Petitioner's interpretation of Section 1225(b)(2)(A). *See* Section II.A & nn. 5 & 6, *supra.* This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir*, 2026 WL 706485, at *4; *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*, 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking

admission" in Section 1225(b)(2)(A).  Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission."  *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous).  This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States.  *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived. Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers."  The provision's use of "or otherwise" indicates that "'applicants for admission' are a subset of those 'seeking admission.'" *Buenrostro-Mendez*, 166 F.4th at 503; *see Avila*, 170 F.4th at 1135 n.4.  Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." (emphasis added).  Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"—not "the arriving alien in seeking admission."  In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

14

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225. It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect. For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States. Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation. *See Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States. But that is a feature of Section 1225, not a bug. The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner never effected a *lawful* entry into the country. He was not admitted. In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission." This is not a novel or even recent understanding of our immigration laws. In 2012, the Board of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . . The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those

15

who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

*Matter of Lemus-Losa*, 25 I. & N. Dec. at 743 (emphasis in original). Thus, the term "seeking admission" does not create an independent pre-requisite for mandatory detention under Section 1225(b)(2)(A).

### 2. "Arriving Aliens"

Second, Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225(b) "applies to people arriving at U.S. ports of entry or who recently entered the United States." Dkt. 1 at 6, 11; *see also* dkt. 10 at 5. He argues that this does not describe his situation as he has been in the country since 2019. *Accord Mohammed v. Olson*, No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *4 (S.D. Ind. Dec. 10, 2025) ("Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to 'arriving' noncitizens attempting to enter the United States.").

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text."). As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission,"

16

which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers.  *Demir*, 2026 WL 706485, at *5.

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*.  That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms.  *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)).  *Accord Buenrostro-Mendez*, 166 F.4th at 505; *Avila*, 170 F.4th at 1136–37.

Granted, it is beyond question that Section 1225 applies to "arriving aliens."  Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country, regardless of when they arrived.  Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

### 3.    1225 Versus 1226

Petitioner argues that all aliens arrested and placed in removal proceedings are entitled to a bond hearing under Section 1226(a) provided they have not committed certain criminal offenses listed in 8 U.S.C. § 1226(c).  Dkt. 1 at 5, 13.  This argument both overlooks the text of Section 1225(b)(2)(A)—

17

stating the applicant for admission "shall be detained" for removal proceedings—and misunderstands the provision's relationship with Section 1226(a).

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes—like the INA—that are often interspersed with "specific solutions" to "specific problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.*

Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

18

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226.  Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added).  In other words, the Executive is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner.  It harmonizes the two provisions.  At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."); *see also Castañon-Nava*, 2026 WL 1223250, at *39 (Kirsch, J., dissenting) ("The government's interpretation of § 1225(b)(2)(A) does not make the Laken Riley Act superfluous, and any overlap is understandable given that Congress passed the Act 'at a time when the Executive was still declining to exercise its full enforcement authority [under § 1225].'" (alteration in original) (quoting *Buenrostro-Mendez*, 166 F.4th at 505)).

19

#### 4.    Past Practice

Petitioner also argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is contrary to decades of prior agency practice. Dkt. 1. at 6–7. However, the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice. And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. (15 Pet.) 141, 162 (1841) (Story, J.)). Past practice aside, Respondent's interpretation of "seeking admission" is not entirely novel. *See Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

\* \* \*

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not. As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity." *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 170 F.4th at 1135–36; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully").

20

Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. And Petitioner expressly argues this point. Dkt. 10 at 7–8; *see also* dkt. 1 at 12. That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Thuraissigiam*, 591 U.S. at 140 ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A). As such, Respondents have not violated Section 1226(a) by detaining him without a bond

hearing.  As he is not eligible for a discretionary bond hearing, the Court does not address his argument that he is entitled to immediate release.

## C.     Bond Regulations

Petitioner next argues that "[t]he application of § 1225(b)(2) to [himself] unlawfully mandates his continued detention and violates [the bond regulations at] 8 C.F.R. § 236.1, 1236.1 and 1003.19."  Dkt. 1 at 14.  But this argument simply restyles his previous argument that Section 1226(a) applies to his detention and not Section 1225.

The regulations Petitioner cites implement and elaborate upon the procedures prescribed by Section 1226.  As their shared title suggests, the regulations at 8 C.F.R. §§ 236.1 and 1236.1 concern the same subject matter— "apprehension, custody, and detention."  These regulations include procedures for the Section 1226(a) bond determinations and appeals thereof.  For example, both regulations state:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in **section 236(c)(1) of the Act** [8 U.S.C. § 1226(c)(1)], under the conditions at **section 236(a)(2) and (3) of the Act** [8 U.S.C. § 1226(a)(2), (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R. § 236.1(c)(8); *id.* § 1236.1(c)(8) (emphasis added).  They also provide:

> [T]he immigration judge is authorized to exercise the authority in **section 236 of the Act** [8 U.S.C. § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under

22

> which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 236.1(d)(1); *id.* § 1236.1(d)(1) (emphasis added).  For its part, 8 C.F.R. § 1003.19 further specifies that "bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236" and establishes procedures for such review.

These regulations implement Section 236 of the INA, that is, 8 U.S.C. § 1226, and impose no broader obligation on the government than Section 1226 itself.  *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) ("An agency's regulation cannot operate independently of the statute that authorized it." (internal quotation marks and citation omitted)).  The Court has determined that Section 1225 governs Petitioner's detention—not Section 1226 and its discretionary bond provision.  The cited bond regulations therefore do not apply to Petitioner, and Respondents have not violated them by detaining him without bond pending removal proceedings.

**D.    Petitioner's current detention does not violate the Fifth Amendment.**

Finally, Petitioner argues his current detention violates the Fifth Amendment's Due Process Clause.  *See* Dkt. 1 at 14–15; *see also* dkt. 10 at 1–7.  It does not.

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally

23

permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). That holding settles the issue. And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case. *Demir*, 2026 WL 706485, at *7–8.

Petitioner argues that the Respondents are required to conduct an individualized assessment of his unique circumstances. Dkt. 10 at 6; *see also* dkt. 1 at 22. The Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner also argues that his initial release from detention created a "protected liberty interest under the Due Process Clause [that] . . . entitle[s him] to procedural protections not found in the statute." Dkt. 10 at 3. But this argument overlooks that he is still subject to removal, and he concedes he does not have a "right to enter or remain in the United States." *Id.* at 7. Under similar circumstances, the Seventh Circuit has held that Petitioner's liberty interest "is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999); *cf. Bolante v. Keisler*, 506

24

F.3d 618, 621 (7th Cir. 2007) (denying Eighth Amendment bail to alien subject to removal because he was not lawfully admitted to the United States). Accordingly, his liberty interest is constitutionally circumscribed by the procedures mandated by the INA, "[g]iven the sweeping powers Congress possesses to prescribe the treatment of aliens." *Parra*, 172 F.3d at 958 (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *accord Rodriguez*, 814 F. Supp. 3d at 963 ("Under *Parra*, because petitioner does not attempt to argue that he is 'entitled to remain in' the United States, his private interest in release pending his removal proceedings is relatively minimal.").[7] The Seventh Circuit's narrower view of Petitioner's liberty interest as an alien who is not lawfully present was upheld by the Supreme Court in *Demore*. 538 U.S. at 516 (favorably citing *Parra*).

Petitioner cites *Zadvydas* to support his argument, dkt. 1 at 15, but that case is distinguishable. There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention. In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point." *Zadvydas*, 533 U.S. at 697. Petitioner's

---

[7] Further, as discussed above, *see* n.2, *supra*, Petitioner was initially detained pursuant to Section 1225(b)(1)'s expedited removal process. Petitioner's initial release on bond was from mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), based on his credible fear claim, not release from mandatory detention under 8 U.S.C. § 1225(b)(2)(A). The Court does not address whether this nuance has any impact on the liberty interest for which he argues because the parties have not raised it.

25

detention here is a detention pending removal proceedings.  Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701.  Petitioner has been detained by ICE pending his removal proceedings for just over two months.  Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Rajinder Singh's Petition for Writ of Habeas Corpus, dkt. [1], and **DISMISSES** this case with prejudice.  Final judgment shall issue by separate entry.

**SO ORDERED.**

Date:  5/19/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

26